Filed 4/18/18 (unmodified opn. attached)

CERTIFIED FOR PARTIAL PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>D'MARE ATTE FRANKLIN,<br><br>    Defendant and Appellant. | D071453<br><br>(Super. Ct. No. SCE351716)<br><br>ORDER MODIFYING OPINION AND DENYING REHEARING<br><br>**NO CHANGE IN JUDGMENT** |

THE COURT:

It is ordered that the opinion filed on March 26, 2018 be modified as follows:

1.  In the paragraph commencing at the bottom of page 3, the second sentence beginning "As they approached their car," is deleted and the following sentences are inserted to read:

> As they approached their car, Franklin emerged from the bar.  He yelled that he was "ready to fight."

2.  On page 19, after the second full sentence on the page, "The instructions further specified that '[a] decision to kill made rashly, impulsively, or without careful

consideration of the choice and its consequences is not deliberate and premeditated.'

(*Ibid.*)" insert the following sentence:

> The erroneous heat of passion instruction, which was explicitly limited to "attempted voluntary manslaughter," did not affect these other instructions.

Appellant's petition for rehearing is denied.

**There is no change in the judgment.**

HALLER, Acting P. J.

Copies to:  All parties

Filed 3/26/18 (unmodified version)

CERTIFIED FOR PARTIAL PUBLICATION[*]

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D071453 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCE351716) |
| D'MARE ATTE FRANKLIN, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Patricia K. Cookson, Judge. Affirmed in part, reversed in part, and remanded with directions.

Mark D. Johnson, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Meagan J. Beale and A. Natasha Cortina, Deputy Attorneys General, for Plaintiff and Respondent.

---

[*]    Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of parts 2 and 3.

A jury convicted D'Mare Atte Franklin of one count of premeditated and deliberate attempted murder (Pen. Code,[1] §§ 664, 187, subd. (a)) and two counts of assault with a semiautomatic firearm (§ 245, subd. (b)).  The jury also found that Franklin personally used a firearm in connection with each count, leading to firearm enhancements on each of his sentences.  (§§ 12022.5, subd. (a), 12022.53, subd. (c).)  On appeal, he argues that his attempted murder conviction should be reversed due to errors that purportedly led the jury to give insufficient consideration and weight to provocation.  Because Franklin fails to establish prejudice flowing from any such errors, we affirm his conviction.  But in light of recent legislative changes to the sentencing scheme for firearm enhancements, which we discuss in the unpublished portion of this opinion, we remand for resentencing.

## FACTUAL AND PROCEDURAL BACKGROUND

Franklin and C.[2] arrived at a La Mesa bar around 12:30 a.m. on a June night.  They had already imbibed several drinks at C.'s apartment. C., a "regular," greeted the bartender and introduced Franklin as his out-of-state cousin.  Franklin came across to the bartender as "a little confrontational."  Another patron later characterized him as "aggressive in the way he spoke" and "like he was ready to start something."

---

[1]     Further statutory references are to the Penal Code unless otherwise specified.

[2]     California Rules of Court, rule 8.90(b) states that we "should consider referring to" certain individuals "by first name and last initial or, if the first name is unusual or other circumstances would defeat the anonymity, by initials only" in order to protect those individuals' privacy.  Accordingly, we refer to the victims in this case by their first names and last initials, and thereafter by first names only.  In light of the distinctiveness of the first name of C. (a witness), we refer to him solely by his first initial.

2

Franklin and C. hung around by the bar and roughhoused with each other a little before leaving briefly to get pizza from a nearby convenience store. They returned with their pizza and played a game of pool. The roughhousing continued. At one point, the bartender intervened, telling them to "take it down a notch."

As Franklin and C. were playing pool, Terry B. and Jamar B. pulled their car into the bar's parking lot. Terry had spoken to C. on the phone a few minutes prior and knew that C. was at the bar. Terry went inside and greeted C. with a high-five. Franklin offered a high-five as well but Terry rebuffed him, saying something along the lines of "mind your business." Franklin retorted that they could "fade," meaning fight.

Franklin and Terry went outside, ostensibly to "fade," but no punches were thrown. There was just a lot of yelling and commotion. However, while they and others were reentering the bar, someone—it was unclear whom—hit Franklin from behind.

Back inside the bar, Franklin made several phone calls. He dialed his brother, girlfriend, and mother. His brother called back and they spoke briefly. Terry grew suspicious when he saw Franklin on the phone and asked him if he was calling someone to get the "heat," referring to a gun. Franklin did not respond. Terry's suspicions were not wholly off base. At trial, Franklin testified that his brother gratuitously said he was bringing his gun.

Terry went outside to find Jamar so they could leave. As they approached their car, Franklin emerged from the bar, yelling that he was "ready to fight." Terry turned and advanced towards Franklin. For several minutes, Franklin and Terry took turns charging

3

at and retreating from each other, but not making contact. Eventually the posturing subsided, and Jamar and Terry got into their car.

Terry backed out of the parking space and began driving toward the parking lot's exit, as Franklin's brother arrived. Franklin bounded around the front of his brother's car to the driver's side and retrieved a gun. He fired four to five rounds at Terry and Jamar's departing vehicle, lodging one bullet in its trunk. As Terry and Jamar's car turned out of the parking lot, Franklin ran after it, hopping down to a lower-level sidewalk and firing five to six more rounds.

Franklin darted back to his brother's vehicle and stowed the gun in the passenger side as a police car pulled into the lot. Franklin ran. The police gave chase, and Franklin tried to evade them, hurdling a fence before reversing course and jumping back over the same fence. Eventually he slowed to a walk and was stopped. While detained, Franklin stomped on his cellphone, calling it a "piece of crap."

The police collected ten spent firearm casings from the bar's parking lot and the nearby area. A gun registered to Franklin's brother was later found in the San Diego harbor. Nine of the casings were matched to it.

Franklin was charged with four counts: attempted murder of Terry (§§ 664, 187, subd. (a), count one); attempted murder of Jamar (§§ 664, 187, subd. (a), count two); assault on Terry with a semiautomatic firearm (§ 245, subd. (b), count three); and assault on Jamar with a semiautomatic firearm (§ 245, subd. (b), count four). The case proceeded to trial by jury.

4

At trial, Franklin took the stand in his own defense. According to Franklin, earlier that day tension arose between Terry and him during a conversation at C.'s apartment; Terry had warned, "I'll be back." Franklin was shocked to later see Terry arrive at the bar. He denied challenging Terry to "fade." Franklin testified that he thought Terry was armed and that Terry threatened to kill him. He also testified that after he was punched from behind, he turned and saw Terry. When he fired the gun, Franklin was afraid for his life and wasn't "trying to do anything . . . besides scar[e] them away from [him]." Franklin also repeatedly testified that he was drunk.

The court instructed the jury on premeditated and deliberate attempted murder (CALCRIM Nos. 600 & 601), attempted voluntary manslaughter based on heat of passion (CALCRIM No. 603), attempted voluntary manslaughter based on imperfect self-defense (CALCRIM No. 604), self-defense (CALCRIM No. 505), and voluntary intoxication (CALCRIM No. 625).

The jury convicted Franklin of willful, deliberate, and premeditated attempted murder of Terry and both assault counts. It further found that, with respect to the attempted murder conviction, Franklin personally discharged a firearm within the meaning of section 12022.53, subdivision (c), and with respect to the assault convictions, Franklin personally used a firearm within the meaning of section 12022.5, subdivision (a). As to the second count, the jury acquitted Franklin of the attempted murder of Jamar (§§ 664, 187, subd. (a)), but hung as to the lesser included offense of attempted voluntary manslaughter (§§ 664, 192, subd. (a)). After the court declared a mistrial as to that lesser included offense, the People dismissed the count.

5

Franklin subsequently moved to reduce his premeditated and deliberate attempted murder conviction to one of attempted voluntary manslaughter or, in the alternative, to have the section 189 premeditation and deliberation finding set aside. The court denied the motion and proceeded to sentencing. For the attempted murder conviction, Franklin was sentenced to an indeterminate life term with a consecutive determinate 20-year term based on the firearm enhancement. For the assault on Jamar, he was sentenced to a concurrent term of six years, plus four years for the firearm enhancement. The sentence for the assault on Terry—also six years, plus four years for the firearm enhancement— was stayed pursuant to section 654.

## DISCUSSION

Most of Franklin's contentions on appeal relate to the potential effect of provocation on his conviction for premeditated and deliberate attempted murder. First, he claims the trial court erroneously responded to a jury query regarding the requirements for an attempted voluntary manslaughter conviction based on heat of passion. He next argues that his trial counsel was ineffective in failing to (1) object to the trial court's proposed response to the jury and (2) request a pinpoint instruction regarding the effect of provocation on premeditation and deliberation.[3] We reject each of these arguments because Franklin fails to establish that any such errors were prejudicial under the relevant legal standards.

---

[3] Franklin also filed a related petition for writ of habeas corpus (*In re D'Mare Atte Franklin*, D071982) claiming ineffective assistance of counsel. The petition was ordered to be considered with this appeal. We deny the petition by separate order.

6

Additionally, Franklin contends that recent legislation regarding firearm enhancements could alter his sentence. The People properly concede that the relevant statutory amendments apply retroactively to nonfinal cases including Franklin's. We therefore remand the case for resentencing.

1.    *The Jury's Question*

   a.    *The erroneous response*

After a jury retires to deliberate, "[s]ection 1138 imposes upon the court a duty to provide the jury with the information the jury desires on points of law." (*People v. Smithey* (1999) 20 Cal.4th 936, 985.) "Where the original instructions are themselves full and complete, the court has discretion under section 1138 to determine what additional explanations are sufficient to satisfy the jury's request for information." (*People v. Beardslee* (1991) 53 Cal.3d 68, 97 (*Beardslee*).) Although "comments diverging from the standard [instructions] are often risky" (*ibid.*), it is generally not acceptable for a trial court to "merely repeat for a jury the text of an instruction it has already indicated it doesn't understand." (*People v. Thompkins* (1987) 195 Cal.App.3d 244, 253 (*Thompkins*)). Rather the court "must at least *consider* how it can best aid the jury." (*Beardslee*, at p. 97.) We review de novo the legal accuracy of any supplemental instructions provided.[4]

---

[4]    Citing *People v. Waidla* (2000) 22 Cal.4th 690 (*Waidla*), other courts of appeal have stated that "[w]e review for an abuse of discretion *any error under section 1138*." (*People v. Eid* (2010) 187 Cal.App.4th 859, 882, italics added; accord, *People v. Lua* (2017) 10 Cal.App.5th 1004, 1016 [same].) Yet *Waidla* does not stand for such a broad proposition. It holds that "[a]n appellate court applies the abuse of discretion standard of

7

The jury's inquiry in this case related to the relationship between attempted murder, attempted voluntary manslaughter, and the heat of passion. " ' "Murder is the unlawful killing of a human being with malice aforethought." ' " (*People v. Rios* (2000) 23 Cal.4th 450, 460 (*Rios*).) "Generally, the intent to unlawfully kill constitutes malice." (*Ibid.*) But evidence that the defendant was acting in a sudden quarrel or heat of passion can " '*negat*[*e*] *the element of malice* that otherwise inheres in such a homicide.' " (*Id.* at p. 461.) Thus, "[i]f the issue of provocation . . . is [] 'properly presented' in a murder case [citations], the *People* must prove *beyond reasonable doubt* that [those] circumstances were *lacking* in order to establish the murder element of malice." (*Id.* at p. 462.) Otherwise, the defendant cannot be convicted of murder (or attempted murder). (*Id.* at p. 461.)

Franklin's jury was instructed with CALCRIM No. 603, which explains the circumstances when "[a]n attempted killing that would otherwise be attempted murder is reduced to attempted voluntary manslaughter" based on a heat of passion theory:

> "The defendant attempted to kill someone because of a sudden quarrel or in the heat of passion if:
>
> "1. The defendant took at least one direct but ineffective step toward killing a person;
>
> "2. The defendant intended to kill that person;

---

review to *any decision by a trial court to instruct, or not to instruct,* in its exercise of its supervision over a deliberating jury." (*Waidla*, at pp. 745–746, italics added.) That is, the decision to provide further instructions in response to an inquiry is reviewed for an abuse of discretion. If a supplemental instruction is given, however, its correctness presents a question of law that we review de novo. (See *People v. Posey* (2004) 32 Cal.4th 193, 218 ["The independent or de novo standard of review is applicable in assessing whether instructions correctly state the law"].)

8

"3.  The defendant attempted the killing because he was provoked;

"4.  The provocation would have caused a person of average disposition to act rashly and without due deliberation, that is, from passion rather than from judgment; AND

"5.  The attempted killing was a rash act done under the influence of intense emotion that obscured the defendant's reasoning or judgment."

The instruction explains further, "The People have the burden of proving beyond a reasonable doubt that the defendant attempted to kill someone and was not acting as a result of a sudden quarrel or in the heat of passion.  If the People have not met this burden, you must find the defendant not guilty of attempted murder."  (CALCRIM No. 603.)

During deliberations, the jury requested "clarification on [CALCRIM No.] 603 numbered items 1–4."  It asked, "Do all four criterion [*sic*] need to be met for attempted voluntary manslaughter?  We all know number 5 is a guaranteed criterion."  With the approval of both sides' attorneys, the court responded, "In order for the Defendant to be found guilty of *attempted voluntary manslaughter*, the People must prove beyond a reasonable doubt all five elements enumerated in [CALCRIM No.] 603."  (Italics added.)[5]

---

[5]    Relying on section 1138 cases where defense attorneys explicitly agreed to courts' proposed responses, the People argue that Franklin waived any claim of error on appeal through his trial counsel's assent to the response.  (See, e.g., *People v. Castaneda* (2011) 51 Cal.4th 1292, 1352.)  As Franklin points out, none of the People's cases consider legally incorrect instructions.  And the *failure to object* to a legally incorrect instruct does not preclude its review on appeal.  (See *People v. Capistrano* (2014) 59 Cal.4th 830, 875

We think we understand what the trial court was trying to say, and we fully appreciate the practical difficulties associated with formulating an accurate response while the jury was deliberating. But the literal language used in this case is inaccurate. "[H]eat of passion . . . is [not] an element of voluntary manslaughter that the People must affirmatively prove beyond reasonable doubt in order to obtain a conviction for that offense." (*Rios*, *supra*, 23 Cal.4th at p. 454.) Instead, the People must prove its *absence* in order to obtain a conviction for *attempted murder*. (*Id.* at p. 462.)

The trial court correctly told the jury that the People had the burden of proving the first two "criteria" listed in CALCRIM No. 603—i.e., that the defendant (1) took at least one direct but ineffective step toward killing a person (2) with the intent to kill that person. Beyond that, however, the People did not (as the jury was told) have the burden of proving "criteria" three to five as listed in CALCRIM No. 603. If all three exist, those factors show the *presence* of sufficient provocation to mitigate the crime, and the People have no obligation or incentive to prove them. Instead, the People have the burden of demonstrating the *absence* of sufficient provocation by proving beyond a reasonable

fn. 11; *People v. Sattiewhite* (2014) 59 Cal.4th 446, 475.) The People do not explicitly invoke the invited error doctrine; however, to the extent they emphasize counsel's agreement—as opposed to failure to object—to the response, it is the relevant legal framework. But it poses no obstacle here since "[t]he record does not make clear whether this decision was a 'conscious and deliberate' tactical choice." (*People v. Boyer* (2006) 38 Cal.4th 412, 473 fn. 47 [no invited error where "[t]he clerk's transcript indicate[d] that the defense joined in *requesting* the instruction"].) As such, we consider the merits of Franklin's claim.

10

doubt that at least one of the three factors is *not* present.  In stating that the People were required to prove adequate provocation, the court's response was simply incorrect.[6]

Franklin asserts that this misstatement precluded the jury from reducing his conviction from attempted murder to attempted voluntary manslaughter unless the People proved sufficient provocation beyond a reasonable doubt.  Because the People would not be motivated to reduce his offense, Franklin argues further that the instruction burdened *him* with proving sufficient provocation beyond a reasonable doubt.  In response, the People contend "[i]t is not reasonable to conclude that the jury would have believed there was such a sea change in the prosecution's or defendant's burden of proof as set forth in the originally provided instructions."  Instead, they posit that, viewed in the context of CALCRIM No. 603, the jury would have interpreted the response to state that "all five factors" were required for a heat of passion theory and "that it was the prosecution's burden to prove beyond a reasonable doubt that the killing was *not* a result of the heat of passion."

To some extent, the People's theory is appealing.  The jury must find all five factors to convict of voluntary manslaughter on a heat of passion theory and the response referred the jury back to CALCRIM No. 603, which properly set forth the burden of proof.  But these aspects fail to explain away (or even address) the inherent conflict in

---

6      We suspect the court's response was motivated by the "fundamental precept of our criminal justice system that before a jury may convict a defendant of a criminal offense, it must find that the prosecution has proved all elements of the offense beyond a reasonable doubt." (*People v. Aranda* (2012) 55 Cal.4th 342, 349.)  The confusion here arises from the oddity that the circumstances listed in CALCRIM No. 603 are not all *elements* of attempted voluntary manslaughter.

stating that (1) attempted murder requires the *absence* of provocation beyond reasonable doubt (correct); and (2) attempted voluntary manslaughter, a lesser included offense of attempted murder, requires the *presence* of provocation beyond reasonable doubt (incorrect). We cannot see any reasonable way to read these instructions as cohesive. If provocation was an element of voluntary manslaughter "when murder and voluntary manslaughter are under joint consideration[,] . . . . [a] fact finder doubtful that provocation or imperfect self-defense was lacking, but also not persuaded beyond reasonable doubt that either was present, could convict the defendant of *neither* murder *nor* voluntary manslaughter, even though it found the defendant had killed intentionally, without justification or excuse. Such a result would turn the law of homicide on its head." (*Rios*, *supra*, 23 Cal.4th at p. 462.) Given the conflict between the two instructions, we proceed to consider whether Franklin was prejudiced by the court's erroneous response. (See *People v. Dollar* (1991) 228 Cal.App.3d 1335, 1342 ["Where two inconsistent instructions are given and one is correct and the other is wrong, an appellate court cannot speculate which one the jury followed"].)

      b.    *Lack of prejudice*

      The parties disagree regarding the applicable standard for assessing prejudice. Franklin argues that the trial court's statement lessened the prosecution's burden to prove malice, an element of attempted murder, and so amounts to federal constitutional error governed by *Chapman v. California* (1967) 386 U.S. 18, 24. The People, in turn, argue that the error is one of state law—specifically, akin to the failure to instruct on a lesser

12

included offense—and therefore governed by the less exacting standard articulated in *People v. Watson* (1956) 46 Cal.2d 818, 836.

Both parties focus on case law considering whether the absence of instruction on heat of passion amounts to federal constitutional error. The law in that arena is unsettled. The Supreme Court has applied *Watson* to assess a trial court's failure to instruct sua sponte on voluntary manslaughter based on the heat of passion. (*People v. Breverman* (1998) 19 Cal.4th 142, 165.) But the court considered only whether the failure to fully instruct on a lesser included offense (voluntary manslaughter) amounted to federal constitutional error—not whether the instructional error infected the murder conviction by altering the prosecution's burden of proof regarding malice, an element of murder. (*Id.* at pp. 169–170, fns. 18–19.) The court expressly declined to reach the latter issue. (*Ibid.*) The Supreme Court again expressly declined to reach this issue in *People v. Moye* (2009) 47 Cal.4th 537, 558, fn. 5. The First Appellate District subsequently held that a failure to give a *requested* heat of passion instruction is a federal constitutional error subject to *Chapman*. (*People v. Thomas* (2013) 218 Cal.App.4th 630, 644.) The full import of that decision remains unclear. (See *People v. Millbrook* (2014) 222 Cal.App.4th 1122, 1146; *People v. Peau* (2015) 236 Cal.App.4th 823, 830 (*Peau*).) We need not wade into this morass, however, because any error here was harmless even under the more stringent *Chapman* standard. (See *Peau*, at p. 830.)

As a threshold matter, we reject Franklin's argument that "the juror's request for clarification on provocation is alone sufficient to establish that [he] was prejudiced." In support of this argument, Franklin relies principally on *Thompkins*, *supra*, 195

Cal.App.3d 244.  There, the trial court provided erroneous answers regarding the relationship between heat of passion and premeditation after the jury announced that it was deadlocked.  (*Id.* at pp. 249–251.)  In light of the erroneous responses, this court reversed the murder and attempted murder convictions.  (*Id.* at p. 252.)  Justice Wiener's opinion explains, "[T]here is no category of instructional error more prejudicial than when the trial judge makes a mistake in responding to a jury's inquiry during deliberations."  (*Id.* at pp. 252–253.)  But in determining there was prejudice, *Thompkins* did not solely rely on the fact that the error was in response to a jury question.  (*Id.* at pp. 251–252.)  We also looked to the facts that "the jury was deadlocked prior to the judge's statements[, so] necessarily, at least one of the jurors was not persuaded by the strength of the prosecution's evidence," and that "even the prosecution's evidence was not completely consistent with a premeditation theory."  (*Ibid.*)

Franklin also relies on *Bollenbach v. United States* (1946) 326 U.S. 607, 612–613 (*Bollenbach*).  There, the United States Supreme Court reversed a conviction based on a trial court's erroneous response to a query after the jury pronounced that it was "hopelessly deadlocked" following seven hours of deliberations; the jury then returned a guilty verdict within five minutes.  (*Id.* at pp. 609–610.)  The Supreme Court stated, "Particularly in a criminal trial, the judge's last word is apt to be the decisive word.  If it is a specific ruling on a vital issue and misleading, the error is not cured by a prior unexceptional and unilluminating abstract charge."  (*Id.* at p. 612.)  But, as in *Thompkins*, *supra*, 195 Cal.App.3d 244, the decision to reverse did not rest on the bare fact that the error was in response to a jury question.  Instead, the court emphasized "the vital fact that

14

for seven hours the jury was unable to find guilt in light of the main charge, but reached a verdict of guilty under the conspiracy count five minutes after their inquiry was answered by an untenable legal proposition. It would indeed be a long jump at guessing to be confident that the jury did not rely on the erroneous [answer]." (*Bollenbach*, at p. 614.)

Thus, neither *Thompkins*, *supra*, 195 Cal.App.3d 244 nor *Bollenbach*, *supra*, 326 U.S. 607 compel a conclusion that the temporal and procedural context of the response alone establishes prejudice. Nor do Franklin's other cited authorities imply such a rule. (*People v. Loza* (2012) 207 Cal.App.4th 332, 356; *People v. Ross* (2007) 155 Cal.App.4th 1033, 1054–1056 (*Ross*).) To the contrary, much of our prior jurisprudence assessing the prejudicial impact of erroneous responses to jury questions would make little sense if the fact that the jury asked about a particular topic was, standing alone, sufficient to establish prejudice. (E.g., *Ross*, at pp. 1054–1056.) Accordingly, we consider more generally whether Franklin was prejudiced and, more particularly, whether any error was clearly harmless in light of the jury's other findings.

The jury was instructed regarding premeditation, deliberation, and willfulness; it found that Franklin's act was indeed premeditated, deliberate, and willful.[7] The People

---

7 The jury was instructed with CALCRIM No. 601, which provides in relevant part:

> "The defendant acted willfully if he intended to kill when he acted. The defendant deliberated if he carefully weighed the considerations for and against his choice and, knowing the consequences, decided to kill. The defendant acted with premeditation if he decided to kill before completing the acts of attempted murder.

15

argue that this finding means the jury "necessarily decided" that Franklin was not acting in the heat of passion and so was not prejudiced by any instructional error. (*People v. Lewis* (2001) 25 Cal.4th 610, 646.) There is some tension in the case law on this issue, but ultimately we agree with the People.

In *People v. Berry* (1976) 18 Cal.3d 509, the Supreme Court reversed a first degree murder conviction where the trial court erred in "refusing to instruct on voluntary manslaughter based on sudden quarrel or heat of passion." (*Id.* at p. 518.) The court held that "the jury's determination that defendant was guilty of murder of the first degree under the instructions given did *not* necessarily indicate that . . . the jury had found that defendant had not killed [the victim] under a heat of passion." (*Ibid.*, italics added.) There, the instructions given "only casually" "made passing reference" to provocation as it related to "distinguishing between murder of the first and second degrees," and "[t]here was no clear direction to the jury to consider the . . . provocatory conduct so as to determine whether defendant, as an ordinary man of average disposition [citations]

---

"The length of time the person spends considering whether to kill does not alone determine whether the attempted killing is deliberate and premeditated. The amount of time required for deliberation and premeditation may vary from person to person and according to the circumstances. A decision to kill made rashly, impulsively, or without careful consideration of the choice and its consequences is not deliberate and premeditated. On the other hand, a cold, calculated decision to kill can be reached quickly. The test is the extent of the reflection, not the length of time.

"The People have the burden of proving this allegation beyond a reasonable doubt. If the People have not met this burden, you must find this allegation has not been proved."

16

having been exposed to such conduct, was provoked into committing the homicide under a heat of passion." (*Ibid.*) The opinion made no reference to instructions regarding premeditation and deliberation. (*Ibid.*)

In *People v. Wharton* (1991) 53 Cal.3d 522 (*Wharton*), our Supreme Court upheld a first degree murder conviction where the trial court erred in refusing to provide a pinpoint instruction explaining "that legally adequate provocation could occur over a considerable period of time." (*Id.* at p. 571.) The court stated, "[b]y finding defendant was guilty of first degree murder, the jury necessarily found defendant premeditated and deliberated the killing." (*Id.* at p. 572.) Such premeditation and deliberation, "involving planning and deliberate action, is manifestly inconsistent with having acted under the heat of passion . . . and clearly demonstrate[d] that defendant was not prejudiced by the failure to give his requested instructions." (*Ibid.*) "Significantly, the jury was otherwise given comprehensive instructions on provocation and heat of passion," including "that a killing is first degree murder if it is 'the result of deliberation and premeditation, so that it must have been formed upon pre-existing reflection and not upon sudden heat of passion.' " (*Id.* at p. 572, quoting former CALJIC No. 8.20 (5th ed. 1988).)

Perhaps in light of the apparent friction between *Berry*, *supra*, 18 Cal.3d 509 and *Wharton*, *supra*, 53 Cal.3d 522, the courts of appeal have diverged as to whether a finding of premeditation and deliberation is necessarily inconsistent with a heat of passion theory. Relying on *Berry* (and without mentioning *Wharton*), Division One of the Second Appellate District concluded it is not. (*People v. Ramirez* (2010) 189 Cal.App.4th 1483, 1487.) Conversely, relying on *Wharton* (and without mentioning

17

*Berry*), our colleagues in Division Three of the Fourth Appellate District concluded it is. (*People v. Speight* (2014) 227 Cal.App.4th 1229, 1245.)

In *Peau*, Division One of the First Appellate District attempted to reconcile the "tension" between *Berry* and *Wharton*. (*Peau*, *supra*, 236 Cal.App.4th at p. 831.) The court emphasized that *Berry* "did not even mention that first degree murder must be willful, deliberate, and premeditated" and "focused only on the fact that the instruction distinguishing between first and second degree murder in that case 'made passing reference to heat of passion and provocation for the purpose of distinguishing between' the two types of murder." (*Peau*, at p. 831.) "[T]his strongly suggests that the sole issue considered in *Berry* was whether the error was harmless because the jury received some instruction on the concepts of heat of passion and provocation, not whether the error was harmless because the jury found the murder was willful, deliberate, and premeditated and such a finding was inconsistent with a finding that the defendant acted in a heat of passion." (*Id.* at pp. 831–832.) Having distinguished *Berry*, the *Peau* court concluded that "*Wharton*'s more recent reasoning [was] directly on point" in the case before it and that "the failure to give a heat-of-passion instruction [] was harmless beyond a reasonable doubt because the jury found that [the] murder was willful, deliberate, and premeditated." (*Peau,* at pp. 831–832.) Pertinently, the *Peau* jury instructions regarding premeditation and deliberation mirrored those given here. (*Id.* at pp. 829, 831; compare CALCRIM No. 521 with CALCRIM No. 601.)

We agree with *Peau* that *Berry* and *Wharton* can be reconciled by reference to the specific aspects of the jury instructions at issue, and conclude that the circumstances here,

18

like those in *Peau*, more closely resemble *Wharton*. Franklin's jury was instructed that it could not find premeditation and deliberation unless the People proved beyond reasonable doubt that he "carefully weighed the considerations for and against his choice and, knowing the consequences, decided to kill." (CALCRIM No. 601.) The instructions further specified that "[a] decision to kill made rashly, impulsively, or without careful consideration of the choice and its consequences is not deliberate and premeditated." (*Ibid.*) We cannot see how a determination that Franklin carefully weighed his choice to act and did not decide rashly or impulsively can coexist with the heat of passion, which "arises when 'at the time of the killing, the reason of the accused was obscured or disturbed by passion to such extent as would cause the ordinary reasonable person of average disposition to act *rashly and without deliberation* and reflection, and from such passion rather than from judgment.' " (*People v. Barton* (1995) 12 Cal.4th 186, 201, italics added.) In other words, the jury's finding of premeditation and deliberation is "manifestly inconsistent with having acted under the heat of passion" and nullifies any potential for prejudice here. (*Wharton*, *supra*, 53 Cal.3d at p. 572; *People v. Speight*, *supra*, 227 Cal.App.4th at p. 1246; see also *People v. Millbrook*, *supra*, 222 Cal.App.4th at p. 1138.)

2.      *Ineffective Assistance of Counsel*

Franklin argues that his trial counsel was ineffective in failing to (1) object to the above discussed response and (2) request a modified version of CALCRIM No. 522 informing jurors that provocation can negate deliberation and premeditation.[8]  To establish ineffective assistance of counsel, Franklin must show that (1) his counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and (2) the deficient performance resulted in prejudice.  (*Strickland v. Washington* (1984) 466 U.S. 668, 688, 691–692 (*Strickland*).)  Under *Strickland*, prejudice requires a reasonable probability that, but for the alleged errors, the result would have been different.  (*Id.* at p. 694.)  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  (*Ibid.*)

As discussed above, the erroneous jury response was harmless beyond a reasonable doubt in light of the jury's premeditation and deliberation finding.  Necessarily there is no prejudice under the lesser *Strickland* standard.  And because we conclude there was no prejudice, it is unnecessary to decide whether counsel's performance was deficient.  (See *Strickland*, *supra*, 466 U.S. at p. 697 ["If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed"].)

_____

8      CALCRIM No. 522 provides:  "Provocation may reduce a murder from first degree to second degree . . . .  The weight and significance of the provocation, if any, are for you to decide.  [¶]  If you conclude that the defendant committed murder but was provoked, consider the provocation in deciding whether the crime was first or second degree murder. . . ."

20

Similarly, the failure to request a modified version of CALCRIM No. 522, a pinpoint instruction (see *People v. Hernandez* (2010) 183 Cal.App.4th 1327, 1333), was not prejudicial. Franklin argues that, absent such an instruction, "the jurors were not aware that provocation insufficient to establish heat of passion could still establish that appellant acted without deliberation." But nothing in the standard manslaughter instructions "preclude[d] the jury from giving weight to any evidence of provocation in determining whether premeditation existed." (*People v. Rogers* (2006) 39 Cal.4th 826, 880.) To the contrary, CALCRIM No. 601—though it does not specifically use the term "provocation"—includes that "[a] decision to kill made rashly, impulsively, or without careful consideration of the choice and its consequences is not deliberate and premeditated."[9] As such, the jury necessarily considered whether Franklin acted "rashly, impulsively, or without careful consideration of [his] choice"; because the jury decided that he did not, a different outcome is not reasonably probable had the jury received a modified version of CALCRIM No. 522.

3.  *Firearm Enhancement Sentencing*

Enhancements were added to Franklin's sentences for attempted murder and the two assault counts pursuant to, respectively, section 12022.53, subdivision (c) and section 12022.5, subdivision (a). As of January 1, 2018, those sections were amended to provide the trial court with discretion to strike or dismiss the relevant firearm enhancements in the interests of justice. (See § 1385, subd. (a).) Previously, exercise of such discretion was

---

[9]     See *ante*, footnote 7.

explicitly prohibited.  (Former §§ 12022.5, subd. (c), 12022.53, subd. (h) (both amended by Stats. 2017, ch. 682 § 1).)

By way of a supplemental opening brief, Franklin argues that his case should be "remanded for resentencing, to allow the trial court to exercise its discretion to strike or dismiss the firearm enhancements."  The People concede that the amendments operate retroactively on all nonfinal judgments, including Franklin's, in light of *In re Estrada* (1966) 63 Cal.2d 740 (*Estrada*) and its progeny.

*Estrada* provides that, absent contrary evidence, we infer the Legislature intends statutory amendments reducing criminal punishment apply retroactively to cases not yet final on appeal.  *Estrada*'s rationale has been applied not only to amendments that "revoke one penalty and provide for a lesser one" but also those that "vest[] in the trial court discretion to impose either the same penalty as under the former law or a lesser penalty."  (See *People v. Francis* (1969) 71 Cal.2d 66, 76.)  Just recently, our Supreme Court applied the *Estrada* "inference of retroactivity" to a statutory amendment that "ameliorated the possible punishment for a class of persons, namely juveniles" in *People v. Superior Court (Lara)* (2018) 4 Cal.5th 299, 308.  The same inference of retroactivity applies here.  (See *People v. Woods* (2018) 19 Cal.App.5th 1080, 1089–1091; *People v. Robbins* (2018) 19 Cal.App.5th 660, 678–679.)  Accordingly, we accept and agree with the merits of the People's concession.  Franklin's case will be remanded for resentencing. We express no view as to how the trial court's discretion should be exercised.

DISPOSITION

The judgment of conviction is affirmed.  The matter is remanded for resentencing to allow the trial court to exercise its discretion under sections 12022.53 and 12022.5.


DATO, J.

WE CONCUR:


HALLER, Acting P. J.


AARON, J.