Filed 10/6/21  P. v. Diaz CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B303103 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KA113304) |
| v. | |
| GABRIEL DIAZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Bruce F. Marrs, Judge.  Affirmed in part, reversed in part, and remanded.

Heather J. Manolakas, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, and Steven D. Matthews and Michael J. Wise, Deputy Attorneys General, for Plaintiff and Respondent.

————————————————

A jury convicted Gabriel Diaz of attempted willful, deliberate, and premediated murder, shooting at an occupied motor vehicle, robbery, and possession of a firearm by a felon. On appeal, he contends there is insufficient evidence showing the attempted murder was premeditated. He also asserts the trial court erred in refusing to instruct the jury on heat-of-passion voluntary manslaughter and made numerous sentencing errors. We vacate the sentence and remand for the trial court to correct several sentencing errors. We affirm the judgment in all other respects.

## FACTUAL AND PROCEDURAL BACKGROUND

Diaz was charged by information with attempted willful, deliberate, and premeditated murder (Pen. Code, §§ 664, 187, subd. (a); count 1),[1] shooting at an occupied motor vehicle (§ 246; count 2), second degree robbery (§ 211; count 3), and possession of a firearm by a felon (§ 29800, subd. (a)(1); count 4). The information alleged gang enhancement allegations as to all four counts (§ 186.22, subd. (b)(1)(A)), and various firearm enhancement allegations on counts 1, 2, and 3 (§ 12022.53, subds. (b), (c), (e)(1)).

The case was tried to a jury, and the prosecution presented the following evidence.

Steven Martinez testified that on the evening of August 5, 2016, he was sitting in a parked car outside his house, talking to his wife on the phone. A red Mustang pulled up and parked nearby. Diaz got out of the passenger-side door of the Mustang, ran up to Martinez, and pointed a gun at his head. Diaz said he was from the Happy Town gang and was going to "blow

---

[1] All undesignated statutory references are to the Penal Code.

2

[Martinez's] brains out." Diaz held the gun in one hand and started hitting Martinez in the face with his free hand. Diaz was with another man, who also started hitting Martinez in the face.

The men took Martinez's phone. Diaz threatened that if Martinez followed him, he would kill Martinez and his family.[2] Diaz and the other man got in the Mustang and drove away.

Martinez was angry and fearful for his family. He decided to follow the Mustang to try to get its license plate number.

Martinez followed the Mustang for about a block before it stopped, and Martinez saw his phone thrown out the passenger-side window. The Mustang started driving again, and Martinez continued to follow it. Almost immediately, the Mustang stopped a second time and Diaz got out of the car. Diaz aimed a gun at Martinez and started firing. Martinez was about 20 feet from the back of the Mustang at the time.

The first shot came through Martinez's windshield and he ducked. Martinez put the car in drive and accelerated, hoping to hit Diaz. Instead, he hit the Mustang. Martinez jumped out of the car and yelled for someone to call the police. Diaz got back in the Mustang through the passenger-side door, and it drove away.

Martinez suffered a gunshot wound to the torso. There were six or seven bullet holes in his car.

Gilbert Madrid testified that he and Diaz were members of the Happy Town gang. On August 5, 2016, Madrid agreed to drive Diaz and two other Happy Town members to Pasadena in his two-door Mustang. As they were driving through a rival gang's territory, Diaz said he needed to use the restroom, so

---

[2]     Martinez did not explicitly say who made this threat. However, he testified that Diaz "was in charge, lead of everything," and his accomplice "didn't say anything."

Madrid pulled over.  Diaz and one of the other passengers, Smiley, got out of the car.  A few moments later, Diaz and Smiley came running back to the car, telling Madrid to "go, go, go."  Smiley got in the backseat and Diaz got in the front passenger seat.

Madrid drove until he felt something collide with his car.  Diaz got out of the car, and Madrid heard gunshots.  Diaz got back in the car holding a semiautomatic firearm, and he told Madrid to drive.  Diaz said "green light," which Madrid understood to mean that if he talked about the shooting there would be a green light to kill him.  Madrid asked what happened, but Diaz told him only that they "hit some guy up and maybe hit him or something."  Madrid drove to his house.

Police recovered nine-millimeter shell casings at the scene of the shooting and from the front passenger floorboard of Madrid's car.  All the casings were determined to have been fired from the same firearm.

The prosecution's gang expert testified that the Happy Town gang's primary activities include robberies, possession of firearms, assaults, and grand theft auto.  In 2014, Happy Town members committed vehicle theft, robbery, unlawful possession of a firearm by a felon, and terrorist threats.  When presented with a hypothetical situation generally mirroring the facts of this case, the expert opined the various crimes were committed to benefit the gang.  As to the attempted murder in particular, he explained that the victim showed disrespect by following the gang members, despite their warning.  Shooting the victim was a form of intimidation and ensured the gang members were able to escape.

The jury found Diaz guilty on all four counts and found true the allegation that the attempted murder was committed willfully, deliberately, and with premeditation.  It also found true the gang and firearm enhancement allegations on each count, except the section 12022.53, subdivision (c) allegation on the robbery count.

The court imposed an aggregate sentence of 15 years to life, plus 53 years.  On count 1, it imposed 15 years to life, plus 10 years for the gang enhancement (§ 186.22, subd. (b)(1)(C)) and 20 years for the firearm enhancement (§ 12023.53, subd. (c)).[3]  On count 3, the court imposed a consecutive term of 23 years, consisting of the mid-term of three years, plus 10 years for the gang enhancement (§ 186.22, subd. (b)(1)(C)) and 10 years for the firearm enhancement (§ 12023.53, subd. (b)).  On count 4, the court imposed a concurrent term of 22 years, consisting of the mid-term of two years, plus 10 years for the gang enhancement (§ 186.22, subd. (b)(1)(C)) and 10 years for a firearm enhancement (§ 12023.53, subd. (b)).  The court stated it believed the sentence on count 2 should be stayed under section 654.

Diaz timely appealed.

_____

[3]    The court stayed the section 12023.53, subdivision (b) enhancement on count 1.  The minute order indicates the court also stayed the gang enhancement.  At sentencing, however, the court stated the gang enhancement would run consecutive to the 15-years-to-life sentence.  "Where there is a discrepancy between the oral pronouncement of judgment and the minute order or the abstract of judgment, the oral pronouncement controls."  (*People v. Zackery* (2007) 147 Cal.App.4th 380, 385.)

# DISCUSSION

## I. Substantial Evidence Supports the Jury's Premeditation Finding

Diaz contends there is insufficient evidence to support the jury's finding that he committed the attempted murder with premeditation. We disagree.

" 'To determine whether sufficient evidence supports a jury verdict, a reviewing court reviews the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable jury could find the defendant guilty beyond a reasonable doubt.' [Citation.]" (*People v. Smith* (2014) 60 Cal.4th 603, 617.) "[I]t is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends. [Citation.] Thus, if the verdict is supported by substantial evidence, we must accord due deference to the trier of fact and not substitute our evaluation of a witness's credibility for that of the fact finder. [Citations.]" (*People v. Jones* (1990) 51 Cal.3d 294, 314.)

This standard of review applies to claims involving both direct and circumstantial evidence. " 'We "must accept logical inferences that the jury might have drawn from the circumstantial evidence. [Citation.]" [Citation.] "Although it is the jury's duty to acquit a defendant if it finds the circumstantial evidence susceptible of two reasonable interpretations, one of which suggests guilt and the other innocence, it is the jury, not the appellate court that must be convinced of the defendant's guilt beyond a reasonable doubt. [Citation.]" [Citation.] Where the circumstances reasonably justify the trier of fact's findings, a reviewing court's conclusion the circumstances might also

6

reasonably be reconciled with a contrary finding does not warrant the judgment's reversal. [Citation.]' [Citation.]" (*People v. Manibusan* (2013) 58 Cal.4th 40, 87.)

In *People v. Anderson* (1968) 70 Cal.2d 15 (*Anderson*), the Supreme Court identified three categories of evidence relevant to a finding of deliberation and premeditation: (1) planning; (2) motive; and (3) the manner of killing. The categories are not exhaustive; nor does *Anderson* require they be accorded a particular weight or be present in some special combination. Nevertheless, " 'when the record discloses evidence in all three categories, the verdict generally will be sustained.' " (*People v. Stitely* (2005) 35 Cal.4th 514, 543.)

Here, the record contains all three *Anderson* categories of evidence. Planning is shown by evidence that, during the robbery and while in a rival gang's territory, Diaz displayed a gun and threatened to kill Martinez if he followed after him and his accomplice. From this, the jury could infer that Diaz contemplated the possibility of murder well in advance of the shooting. (See *People v. Young* (2005) 34 Cal.4th 1149, 1183 [evidence that the defendant executed a planned entry into a home armed with a loaded gun supported an inference that he considered the possibility of murder in advance].)

The jury could also infer planning from the sequence of events immediately preceding the shooting. According to Martinez, the Mustang stopped as he was following it, and a passenger threw his stolen phone out the window. The Mustang then started driving, and Martinez continued to follow it. Moments later, the Mustang stopped again, and Diaz got out and started firing at Martinez. From this, the jury could reasonably infer that Diaz formed a plan to throw the phone out the window

7

as a test to see if Martinez would continue following them. Once it was clear Martinez would, Diaz told the driver to stop and acted on his earlier threat to kill Martinez.

There is also strong evidence of motive. As noted above, Diaz threatened to kill Martinez if he followed him after the robbery. Martinez did not heed this warning, and instead drove behind the Mustang, even after he could have recovered his phone. The jury could reasonably infer Diaz decided to kill Martinez because he felt disrespected or in order to decrease the chance he would be caught for the robbery. Such inferences find further support in the gang expert's testimony.

Finally, the manner of the attempted killing supports a finding of premeditation. Based on the sequence of events summarized above, the jury could infer that Diaz tested Martinez by throwing the phone out the window before directing the driver to stop the Mustang a second time. He then got out of the car, turned toward Martinez, and fired six to seven shots in his direction. This suggests Diaz's actions were premeditated and deliberate, rather than a rash outburst of emotion. Considered with the strong evidence of planning and motive, there is substantial evidence supporting the jury's finding that the attempted murder was premeditated.

## II. The Trial Court Did Not Err In Refusing to Instruct the Jury On Heat-of-Passion Attempted Manslaughter

Diaz contends the trial court erred by refusing to instruct the jury on heat-of-passion attempted manslaughter. We disagree.[4]

A defendant who intentionally attempts to kill in a heat of passion can be found guilty only of attempted voluntary manslaughter. (§ 192, subd. (a).) Heat of passion has both an objective and a subjective component. (*People v. Steele* (2002) 27 Cal.4th 1230, 1252–1253 (*Steele*).) The objective component requires a " 'provocation' sufficient to cause an ' "ordinary [person] of average disposition . . . to act rashly or without due deliberation and reflection, and from this passion rather than from judgment." ' [Citations.]" (*People v. Breverman* (1998) 19 Cal.4th 142, 163.) The subjective component requires the defendant attempt to kill under the heat of passion. (*Steele, supra*, at pp. 1252–1253.)

A trial court is required to instruct on heat-of-passion attempted manslaughter if the theory is supported by substantial evidence. (See *People v. Breverman, supra,* 19 Cal.4th at p. 154; *People v. Thomas* (2013) 218 Cal.App.4th 630, 643.) Substantial evidence in this context is evidence " ' "from which a jury composed of reasonable persons could conclude that the facts underlying the particular instruction exist." [Citations.]'

[4] We reject the Attorney General's contention that Diaz forfeited some of his arguments by failing to fully articulate them in the trial court. (See *People v. Peoples* (2016) 62 Cal.4th 718, 741–742.)

[Citation.]" (*People v. Enraca* (2012) 53 Cal.4th 735, 759.) It does not mean " ' "*any* evidence, no matter how weak," ' " but rather, " ' " 'evidence from which a jury composed of reasonable [persons] could . . . conclude[ ]' " that the lesser offense, but not the greater was committed.' " (*People v. Moye* (2009) 47 Cal.4th 537, 553.)

In this case, defense counsel requested the trial court instruct the jury on attempted manslaughter based on heat of passion. In support, counsel argued the jury might determine from Madrid's testimony that Diaz fired the shots in a heat of passion caused by Martinez striking the Mustang with his car. The court declined to give the instruction, explaining, "A fender bender accident from the rear by itself would not be sufficient to provide a reasonable basis to even give the instruction." Diaz insists this was error because the passions of an ordinary reasonable person could be aroused after being chased and purposefully rear-ended.

Even assuming that were true, the trial court was not required to give the requested instruction because there was insufficient evidence showing Diaz actually, subjectively, attempted to kill under the heat of passion. Diaz did not testify, so there was no direct evidence of his state of mind. Nor was there indirect evidence showing he was acting under the heat of passion. To the contrary, Madrid, who was sitting next to Diaz in the Mustang, gave no indication that Diaz exhibited any strong emotion when Martinez chased and then rear-ended their vehicle. Instead, according to Madrid, Diaz simply got out of the car and started firing a gun. He then quickly returned to the vehicle, told Madrid to drive, and threatened him to keep quiet, all of which suggests Diaz was thinking rationally at the time. On this record, even when viewed in the light most favorable to Diaz, no

10

reasonable juror could conclude he was "so inflamed that he . . . would lose reason and judgment . . . .' [Citation.]" (*People v. Thomas* (2012) 53 Cal.4th 771, 813; see *People v. Manriquez* (2005) 37 Cal.4th 547, 585 [a heat-of-passion instruction was not required where there was no showing the defendant exhibited anger, fury, or rage].)

Even if the court should have instructed the jury on heat-of-passion attempted manslaughter, the error was harmless under any standard of review. (*People v. Watson* (1956) 46 Cal.2d 818, 836 [more favorable outcome reasonably probable]; *Chapman v. California* (1967) 386 U.S. 18, 24 [harmless beyond a reasonable doubt].) "Error in failing to instruct the jury on a lesser included offense is harmless when the jury necessarily decides the factual questions posed by the omitted instructions adversely to [the] defendant under other properly given instructions." (*People v. Lewis* (2001) 25 Cal.4th 610, 646.)

In *People v. Wharton* (1991) 53 Cal.3d 522 (*Wharton*), the California Supreme Court held a failure to instruct that provocation could occur over a considerable period of time was harmless where the jury found the defendant committed murder willfully, deliberately, and with premeditation. The court reasoned that such a "state of mind, involving planning and deliberate action, is manifestly inconsistent with having acted under the heat of passion—even if that state of mind was achieved after a considerable period of provocatory conduct—and clearly demonstrates that defendant was not prejudiced by the failure to give his requested instruction." (*Id.* at p. 572.)

Numerous lower courts have applied *Wharton* to hold harmless the failure to instruct on heat-of-passion manslaughter where the defendant was convicted of willful, deliberate, and

11

premeditated murder or attempted murder.  (See *People v. Graham* (2021) 64 Cal.App.5th 827 (*Graham*); *People v. Wang* (2020) 46 Cal.App.5th 1055, 1071–1072; *People v. Franklin* (2018) 21 Cal.App.5th 881, 894–895 (*Franklin*); *People v. Peau* (2015) 236 Cal.App.4th 823, 831 (*Peau*); *People v. Speight* (2014) 227 Cal.App.4th 1229, 1246.)

Here, the trial court instructed the jurors that if they found Diaz guilty of attempted murder, they must decide whether he acted willfully, deliberately, and with premeditation.  The court fully defined those terms and then instructed the jurors the attempted murder was willful, deliberate, and premeditated if "preceded and accompanied by a clear, deliberate intent to kill, which was the result of deliberation and premeditation, so that it must have been formed upon pre-existing reflection and not under a sudden heat of passion or other condition precluding the idea of deliberation . . . ."  The jury, in turn, found the allegation true.  As in *Wharton*, "[t]his state of mind, involving planning and deliberate action, is manifestly inconsistent with having acted under the heat of passion . . . and clearly demonstrates that defendant was not prejudiced by the failure to give his requested instruction." (*Wharton, supra*, 53 Cal.3d at p. 572.)

Citing *People v. Berry* (1976) 18 Cal.3d 509 (*Berry*), and *People v. Ramirez* (2010) 189 Cal.App.4th 1483 (*Ramirez*), Diaz insists the jury's finding that he acted willfully, deliberately, and with premeditation does not necessarily render the error harmless.  In *Berry*, which was decided 15 years before *Wharton*, the Supreme Court held a court prejudicially erred in failing to instruct on heat-of-passion manslaughter.  In doing so, the high court rejected the argument that the error was harmless because the jury convicted the defendant of first degree murder and the

12

instructions made passing and casual reference to heat of passion and provocation for the purpose of distinguishing between first and second degree murder.  (*Berry*, at p. 518.)

The *Ramirez* court subsequently applied *Berry* (without mentioning *Wharton*) and held a trial court prejudicially erred in failing to instruct on heat-of-passion manslaughter, despite the jury's finding that the defendant acted willfully, deliberately, and with premeditation.  (*Ramirez, supra*, 189 Cal.App.4th at p. 1488.)  Several courts have declined to follow *Ramirez* on the basis that it is inconsistent with *Wharton*.  (See, e.g., *Graham, supra*, 64 Cal.App.5th 827; *Peau, supra*, 236 Cal.App.4th at p. 831; *Franklin, supra*, 21 Cal.App.5th at p. 894.)

In *Peau,* the court attempted to reconcile the apparent tension between *Berry* and *Wharton*.  The court explained that *Berry* "did not even mention that first degree murder must be willful, deliberate, and premeditated.  Instead, it focused only on the fact that the instruction distinguishing between first and second degree murder in that case 'made passing reference to heat of passion and provocation for the purpose of distinguishing between' the two types of murder.  [Citation.]  We think this strongly suggests that the sole issue considered in *Berry* was whether the error was harmless because the jury received some instruction on the concepts of heat of passion and provocation . . . ."  (*Peau, supra*, 236 Cal.App.4th at pp. 831–832.)  In contrast, the issue in *Wharton* was "whether the error was harmless because the jury found the murder was willful, deliberate, and premeditated and such a finding was inconsistent with a finding that the defendant acted in a heat of passion."  (*Id*. at pp. 831–832.)  The *Peau* court concluded the reasoning in *Wharton* was directly on point in its case because the jury found

13

the murder was willful, deliberate, and premediated.  (*Peau,* at p. 831.)

We agree with *Peau*'s reading of *Berry* and *Wharton*. Moreover, like that case, the circumstances here resemble *Wharton* more closely than *Berry*.  Accordingly, we conclude the jury's finding that the attempted murder was willful, deliberate, and premeditated renders the failure to give a heat-of-passion instruction harmless beyond a reasonable doubt.

## III.  Remand Is Necessary to Correct Sentencing Errors

### A. The Court Erred By Imposing a Firearm Enhancement and a 10-year Gang Enhancement on Count 4

Diaz contends, and the Attorney General concedes, the trial court erred by imposing a firearm enhancement on count 4, possession of a firearm by a felon (§ 29800, subd. (a)(1)).  We agree.  Diaz was not charged with, and the jury did not find true, any firearm enhancement allegations in connection with count 4. Moreover, section 12022.53, subdivision (a), enumerates the predicate felonies to which a firearm enhancement may attach; possession of a firearm by a felon is not one of them.  Accordingly, the court erred by imposing a 10-year firearm enhancement on count 4.

Diaz additionally contends the court erred by imposing a 10-year gang enhancement on count 4.  Once again, the Attorney General concedes the point, and we agree with Diaz.  A 10-year gang enhancement applies only to violent felonies.  (§ 186.22, subd. (b)(1)(C).)  Possession of a firearm by a felon is not a violent felony.  (See § 667.5, subd. (c).)  The trial court instead should

14

have imposed an additional term of either two, three, or four years.[5]  (§ 186.22, subd. (b)(1)(A).)

The parties agree, as do we, that the proper procedure is to vacate the sentence and remand the case so the trial court may exercise its sentencing discretion under section 186.22, subdivision (b)(1)(A).

## B. The Trial Court Must Impose a Sentence On Count 2

Diaz contends the trial court erred by failing to fully impose a sentence on count 2.  We agree.[6]

At sentencing, the court indicated it believed the sentence on count 2 should be stayed pursuant to section 654, but it did not orally impose a term for the crime or its enhancements.  The court's minute order, however, indicates it imposed and then stayed the mid-term of five years on count 2, and stayed all the enhancements.

"[W]hen a trial court determines that section 654 applies to a particular count, the trial court must impose sentence on that count and then stay execution of that sentence."  (*People v. Alford, supra,* 180 Cal.App.4th at p. 1466.)  Moreover, "[t]o be

---

[5]     Contrary to the parties' suggestions, for purposes of the gang enhancement statute, a violation of section 29800, subdivision (a)(1), does not become a serious felony by virtue of the fact that it was gang related.  (See *People v. Briceno* (2004) 34 Cal.4th 451, 465.)

[6]     We reject the Attorney General's argument that Diaz forfeited the issue by failing to object below.  The purported error resulted in an unauthorized sentence, which presents an exception to the general forfeiture rules.  (*People v. Scott* (1994) 9 Cal.4th 331, 354; *People v. Alford* (2010) 180 Cal.App.4th 1463, 1467–1468.)

15

effective, a sentence must be pronounced orally on the record and in defendant's presence." (*People v. McGahuey* (1981) 121 Cal.App.3d 524, 530.) Here, the court did not orally impose a sentence on count 2. Accordingly, on remand, the court must orally impose a sentence on count 2, including any enhancements that it declines to strike. It may then stay the sentence under section 654.

## C. The Trial Court Was Not Required to Strike the Gang or Firearm Enhancements On Counts 1, 2, and 3

Diaz argues the trial court erred by declining to strike either the firearm or gang enhancements on counts 1, 2, and 3. We disagree.

On counts 1, 2, and 3, the information alleged that Diaz personally used a firearm (§ 12022.53, (b)), and personally and intentionally discharged a firearm (§ 12022.53, subd. (c)) in the commission of the offenses. It further alleged that a principal did the same (§ 12022.53, subds. (c), (e)(1)).

The prosecution seemingly abandoned the "principal" enhancements at trial. Accordingly, the court instructed the jury only that Diaz was charged with personally using and personally and intentionally discharging a firearm during the commission of the charged crimes. The court further instructed the jury that to find the discharge enhancements true, "the defendant himself must have intentionally discharged" a firearm. The court directed the jury to "include a special finding on [these questions] in your verdict using a form that will be supplied for that purpose."

Despite these instructions, the pre-printed verdict forms only gave the jury the option of finding a *principal* personally used or personally and intentionally discharged a firearm. The jury nonetheless found the allegations true.[7] The trial court then imposed both firearm and gang enhancements on counts 1 and 3.[8]

A court may impose both a gang and a firearm enhancement on a single count only if the defendant personally used or discharged the firearm. (§ 12022.53, subd. (e)(2).) In all other situations, the court must impose the enhancement that provides for the greatest penalty or longest term of imprisonment. (§ 12022.53, subd. (j).)

Diaz contends the trial court was required to strike either the firearm enhancements or gang enhancements given the verdict forms state the jury found only that a principal discharged and used a firearm. The Attorney General urges us to affirm because, despite the wording of the verdict forms, it is clear the jury found Diaz personally used or discharged a firearm. According to the Attorney General, the references to a "principal" in the verdict forms were merely technical defects. We agree with the Attorney General.

" " 'A verdict is to be given a reasonable intendment and be construed in light of the issues submitted to the jury and the instructions of the court." [Citations.]' [Citations.] 'The form of a verdict is immaterial provided the intention to convict of the crime charged is unmistakably expressed. [Citation.]' [Citation.]

_____

[7] The jury found the allegation that a principal personally and intentionally discharged a firearm in the commission of the robbery (count 3) to be "not true."

[8] As discussed in the previous section, the trial court did not address the count 2 enhancements at sentencing.

'[T]echnical defects in a verdict may be disregarded if the jury's intent to convict of a specified offense within the charges is unmistakably clear, and the accused's substantial rights suffered no prejudice. [Citations.]' [Citation.]" (*People v. Jones* (1997) 58 Cal.App.4th 693, 710–711.)

*People v. Trotter* (1992) 7 Cal.App.4th 363, is instructive. In that case, the information alleged the defendant personally used a firearm in the commission of the charged offenses. The trial court instructed the jury in accordance with the information, but the pre-printed verdict forms stated the jury found true that the defendant was merely "armed" with a firearm. (*Id*. at p. 369.) After the jury was discharged, the trial court amended the verdicts to state the defendant "personally used" a firearm. On appeal, the defendant argued the trial court exceeded its authority and the wording of the verdict forms was dispositive. The Court of Appeal disagreed and affirmed, explaining this was a "textbook example of clerical error." (*Id*. at p. 370.)

The same is true here. The prosecution tried this case from start to finish under the theory that Diaz was the shooter and personally used a firearm during the robbery. At no point did the prosecution argue or otherwise suggest he could be found guilty under a vicarious liability theory. Nor did either party argue that anyone else in the Mustang discharged, used, or even possessed a firearm.[9] Defense counsel, in fact, essentially

---

[9]     The prosecution presented evidence that Martinez initially told police the driver of the Mustang was armed and shot him. At trial, Martinez identified Diaz as the shooter and insisted he was a passenger in the Mustang. Defense counsel did not challenge that testimony.

18

conceded that Diaz was the shooter, and sought to convince the jury he acted in self-defense or without intent to kill.

Consistent with the prosecution's theory and the evidence presented at trial, the court instructed the jury that it was alleged only that Diaz personally used and discharged a firearm. The court further explained that for those allegations to be true, the jury must find Diaz "himself . . . discharged [the firearm]" or used the firearm. The court did not instruct the jury on any vicarious liability theories, either in connection with the underlying offenses or the firearm enhancement allegations.

Under these circumstances, there is no doubt the jurors found Diaz personally discharged and used a firearm. The references to a "principal" in the pre-printed verdict forms were merely technical errors that do not reflect the jury's actual verdict. The error, moreover, did not prejudice Diaz's substantial rights, as he was fully aware of the allegations against him and had the opportunity to defend himself at trial. The court, therefore, was not required to strike either the gang or firearm enhancements on counts 1, 2, and 3.

### D. The Trial Court Must Correct the Custody Credits

Diaz contends, and the Attorney General concedes, the trial court miscalculated his credits for actual days in custody and erroneously failed to award him worktime credit at 15 percent. We agree. (See § 2933.1, subd. (a).) However, because we are remanding the case for resentencing, there is no need to correct the errors on appeal.

## DISPOSITION

Diaz's sentence is vacated.  The case is remanded for resentencing consistent with this opinion.  In all other respects, the judgment is affirmed.


OHTA, J.*

We Concur:



GRIMES, Acting P. J.



WILEY, J.

---

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.