Filed 11/16/20  P. v. Katz CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ZACHARY A. KATZ,<br><br>    Defendant and Appellant. | A153625<br><br>(San Mateo County<br>Super. Ct. No. SC081375A) |

Defendant Zachary Katz drove in the wrong direction on a highway while under the influence of alcohol and caused a fatal car crash.  A jury convicted him of gross vehicular manslaughter while intoxicated, driving under the influence of alcohol causing bodily injury, and driving with a blood-alcohol level of 0.08 percent or more causing bodily injury.  Defendant argues the trial court improperly responded to a jury question about his defense—that he was unconscious due to an epileptic seizure while he was driving in the wrong direction—by simply repeating and directing the jury to specific instructions already provided.  He also argues we must reverse a prior order of this court denying his motion to suppress his blood-alcohol test results.  We affirm.

1

## BACKGROUND

### I. Vehicular Collision

In the early morning hours on October 5, 2013, three separate drivers witnessed a vehicle traveling northbound in the wrong direction on U.S. Highway 101 in the southbound lanes. The vehicle caused several cars to swerve out of the way to avoid colliding with it. Defendant's wrong-way driving continued for approximately nine and one-half miles, when he ultimately struck a taxi head-on. The taxi then hit a third car, and the taxi flipped over. As a result of the collision, one taxi passenger died, the taxi driver sustained multiple fractures, and the other passenger's serious injuries and fractures required numerous surgeries and several weeks of intensive care.

Officers and emergency personnel responding to the collision found the defendant pinned under the steering wheel of his car. The interior of the car smelled of alcohol. Defendant's eyes were red and watery, and his speech was slurred. An officer administered two preliminary alcohol screenings, registering defendant's blood-alcohol content of 0.158 and 0.160 percent, respectively. The officer then placed defendant under arrest for driving under the influence of alcohol. A few hours after defendant was extracted from his car and transported to the hospital, defendant's blood was drawn, which showed an alcohol concentration of 0.13 percent. Defendant admitted consuming approximately three alcoholic beverages late the night before.

Based on these facts, an information was filed charging defendant with gross vehicular manslaughter while intoxicated (Pen. Code, § 191.5, subd. (a) [count 1]),[1] driving under the influence of alcohol causing bodily injury (Veh. Code, § 23153, subd. (a) [count 2]), and driving with a blood-alcohol level of

---

[1] All further unspecified statutory references are to the Penal Code.

0.08 percent or more causing bodily injury (Veh. Code, § 23153, subd. (b) [count 3]). The information also alleged additional enhancements for counts 2 and 3 that defendant caused death or injury to more than one victim and that defendant personally inflicted great bodily injury. (Pen. Code, § 12022.7, subd. (a); Veh. Code, § 23558.)

## II. Jury Trial

### A. *Unconsciousness Defense*

At a jury trial, defendant argued an epileptic seizure rendered him unconscious while he was driving in the wrong direction on the highway. The testimony at trial established that at various times in the past, he lost consciousness and was unable to remember events during those times—a condition previously diagnosed as anxiety. Two years after the collision, however, defendant was diagnosed with temporal lobe epilepsy, a condition resulting in recurrent seizures generally lasting between 30 seconds and two minutes. A professor of neurology and director of an epilepsy center testified that someone driving in the same manner as defendant was consistent with someone with temporal lobe epilepsy having a seizure.

The prosecution's evidence demonstrated that defendant's blood-alcohol level at the time of the collision was approximately 0.18 percent, indicating consumption and full absorption of approximately four alcoholic drinks.

### B. *Jury Instructions*

The trial court provided the jury with a number of CALCRIM instructions consistent with defendant's charges and defense. As given, CALCRIM No. 590, addressing the elements of gross vehicular manslaughter while intoxicated (count 1), instructed the jury: "[T]he People must prove that: [¶] 1. The defendant drove under the influence of an alcoholic beverage; [¶] 2. While driving that vehicle under the influence of an alcoholic beverage,

3

the defendant also committed a misdemeanor; [¶] 3. The defendant committed the misdemeanor with gross negligence; [¶] AND [¶] 4. The defendant's grossly negligent conduct caused the death of another person."

CALCRIM No. 2100, setting forth the charge of driving under the influence causing injury (count 2), as given, stated: "[T]he People must prove that: [¶] 1. The defendant drove a vehicle; [¶] 2. When he drove a vehicle, the defendant was under the influence of an alcoholic beverage. [¶] 3. While driving a vehicle under the influence, the defendant also committed an illegal act; [¶] AND [¶] 4. The defendant's illegal act caused bodily injury to [victim]."

CALCRIM No. 2101, setting forth the charge of causing injury to another person while driving with a blood-alcohol level of 0.08 percent (count 3), as given to the jury, stated: "[T]he People must prove that: [¶] 1. The defendant drove a vehicle; [¶] 2. When he drove, the defendant's blood alcohol level was 0.08 percent or more by weight; [¶] 3. When the defendant was driving with that blood alcohol level, he also committed an illegal act; [¶] AND [¶] 4. The defendant's illegal act caused bodily injury to another person."

All three instructions stated the People must prove the defendant engaged in an illegal act or misdemeanor before finding defendant guilty of each charged offense. As such, each instruction further specified that the People alleged the defendant committed the following act or misdemeanor: "driving a vehicle upon a highway to the left of an intermittent barrier or a dividing section which separates two or more opposing lanes of traffic"— wrong-way driving.

The trial court also instructed the jury with CALCRIM No. 3425, setting forth the requirements for the unconsciousness defense, given as:

4

"The defendant is not guilty of the crimes charged in Counts 1, 2 and 3 . . . if he acted while unconscious. Someone is unconscious when he or she is not conscious of his or her actions. Someone may be unconscious even though able to move.

"Unconsciousness may be caused by an epileptic seizure or involuntary intoxication.

"The defense of unconsciousness may not be based on voluntary intoxication.

"The People must prove beyond a reasonable doubt that the defendant was conscious when he acted. If there is proof beyond a reasonable doubt that the defendant acted as if he were conscious, you should conclude that he was conscious, unless based on all of the evidence, you have a reasonable doubt that he was conscious, in which case you must find him not guilty." (See CALCRIM No. 3425.) The parties agreed these instructions must be given to the jurors; there were no objections to the wording of these instructions; and the court did not reject any instructions that the defense counsel requested.

During deliberations, the jury asked: "[T]o use 3425 'unconscious' [defense], dose [*sic*] the defendent [*sic*] need to be unaware of his actions the entire time he was driving under the influence OR just while driving the wrong way on 101 OR just at the time of the crash?" After consulting with counsel, the trial court repeated the sentence in CALCRIM No. 3245, "The People must prove beyond a reasonable doubt that the defendant was conscious when he acted." The court then referred the jury back to its instructions, stating, "The act or acts required for any specific charged crime or lesser crime is set forth in the instruction for that specific crime." There were no further questions about the CALCRIM No. 3425 instruction.

5

The jury found defendant guilty as to all counts and found true all alleged enhancements.

## DISCUSSION

## I.  Trial Court Response to Jury Question

Defendant contends the trial court incorrectly responded to the jury's request for clarification about his unconsciousness defense because it repeated and referred the jury to the instructions already provided.  He takes issue with the court's alleged failure to clearly identify the "act" during which he was required to be conscious, an element the jury needed to assess the viability of his unconsciousness defense.  According to the defendant, the only "correct" answer was "unconsciousness occurring only during the wrong way driving was a defense to that offense and therefore would be a defense to the charged offenses."  Anything aside from this response, he claims, violated the trial court's duty under section 1138 to help the jury understand the legal principles of the case and deprived him of his due process right to his defense and correct jury instructions.  (§ 1138; see *People v. Moore* (1996) 44 Cal.App.4th 1323, 1331 (*Moore*).)  We disagree.

### A.  *Forfeiture*

At the outset, defendant forfeited this claim on appeal.  The trial court's response was made after consulting with counsel, and the record does not reflect any objection, thus indicating an agreement with the proposed response.  (See *People v. Ross* (2007) 155 Cal.App.4th 1033, 1048 ["A defendant may forfeit an objection to the court's response to a jury inquiry through counsel's . . . tacit approval," meaning "the court makes clear its intended response and defense counsel, with ample opportunity to object, fails to do so"].)  Although defendant frames his claim as a challenge to the "correctness" of the trial court's response, he does not identify any actual

6

error. Substantively, his claim involves a modification rather than a "correction" of the trial court's response to the jurors. By failing to request any allegedly crucial clarifying language from the trial court, which it had no sua sponte duty to provide, defendant cannot raise this claim now. (See *People v. Lang* (1989) 49 Cal.3d 991, 1024 [a party forfeits a claim "that an instruction correct in law and responsive to the evidence was too general or incomplete unless the party has requested appropriate clarifying" language].)

**B.** *Section 1138*

Even overlooking the defendant's failure to object or to request clarifying language, he is no more successful on the merits. Section 1138 requires a trial court to provide information " 'on any point of law arising in the case' " during jury deliberations, but it does not require it to elaborate on standard instructions. (*People v. Hodges* (2013) 213 Cal.App.4th 531, 539, fn. 3; see § 1138.) " 'Where the original instructions are themselves full and complete, the court has discretion under section 1138 to determine what additional explanations are sufficient to satisfy the jury's request for information. . . .' " (*Hodges*, at p. 539.) Errors under section 1138 are reviewed for an abuse of that discretion. (*Moore*, *supra*, 44 Cal.App.4th at pp. 1330–1331.)

Here, the trial court acted well within its discretion by directing the jury to review complete and correct instructions on defendant's charged offenses and defense. It first repeated the first sentence of CALCRIM No. 3425, which stated, "The People must prove beyond a reasonable doubt that the defendant was conscious when he acted." The instructions further noted that the "defendant is not guilty of the crimes charged in Counts 1, 2 and 3 and of the lesser crimes to the charged crimes if he acted while unconscious." This was a correct statement of the law. (See *People v.*

7

*Mathson* (2012) 210 Cal.App.4th 1297, 1321 (*Mathson*) [" 'unconsciousness negates the elements of voluntariness and intent, and when not voluntarily induced is a complete defense to a criminal charge' "].)

The court next advised the jury to review the instructions for defendant's three charged offenses by stating, "The act or acts required for any specific charged crime or lesser crime is set forth in the instruction for that specific crime." All three instructions for these counts required the People to prove that defendant engaged in an illegal *act* or misdemeanor. (See CALCRIM Nos. 590 [(count 1) "While driving that vehicle under the influence of an alcoholic beverage, the defendant also committed a misdemeanor"], 2100 [(count 2) "While driving a vehicle under the influence, the defendant also committed an illegal act"], 2101 [(count 3) "When the defendant was driving with that blood alcohol level, he also committed an illegal act"].) This too was a correct statement of the law. (See, e.g., *People v. Nicolas* (2017) 8 Cal.App.5th 1165, 1173 [describing gross vehicular manslaughter as a crime requiring "the confluence of two different mental states: general intent in the driving of the vehicle, and gross negligence while committing a traffic violation"].)

CALCRIM Nos. 2100 and 2101 specified: "The People allege that the defendant committed the following illegal *act*: driving a vehicle upon a highway to the left of an intermittent barrier or a dividing section which separates two or more opposing lanes of traffic." (Italics added.) CALCRIM No. 590 similarly identified the misdemeanor the People were required to prove before finding defendant guilty of the offense: "driving a vehicle upon a highway to the left of an intermittent barrier or a dividing section which separates two or more opposing lanes of traffic"—wrong-way driving. All

8

three instructions expressly referred to an additional special instruction identifying the elements of wrong-way driving.

Read together, the instructions explained defendant was not guilty of his charged crimes if he was unconscious at the time he engaged in the illegal act of wrong-way driving. (Cf. *People v. Galloway* (1979) 100 Cal.App.3d 551, 567–568 ["The absence of an essential element in one instruction may be supplied by another or cured in light of the instructions as a whole"].) No further instruction or clarification was required.

Defendant nonetheless argues the trial court did not address the jury's inquiry with " 'concrete accuracy' " and it should have expressly stated unconsciousness while driving in the wrong direction was a defense to all his charges. But defendant focuses entirely on the first portion of the trial court's response—that the People have the burden of demonstrating defendant was conscious at the time he acted—reading it in isolation. Indeed, he ignores the second portion of the response referring the jury to the instructions, and he ignores the instructions as a whole. (See *Moore*, *supra*, 44 Cal.App.4th at p. 1330 [reviewing the propriety of a court's response to a jury inquiry requires an examination of the instructions as a whole].) After reviewing the entire jury charge, the trial court's response sufficiently informed the jury of this requirement.

Relying on *People v. Franklin* (2018) 21 Cal.App.5th 881, 887, defendant further takes issue with the trial court's repeating the instructions because the jury already indicated it did not understand them. This reliance is misplaced. "[C]omments diverging from the standard [instructions] are often risky." (*People v. Beardslee* (1991) 53 Cal.3d 68, 97.) While a trial court is not authorized to "figuratively throw up its hands and tell the jury it cannot help" in response to a jury inquiry about the legal principle, it

9

satisfies its obligations under section 1138 by considering "how it can best aid the jury," including referring the jury back to the specific instructions. (*Ibid.*; see *Franklin*, at p. 887.) Here, the record shows the trial court considered a specific response. After consulting counsel for both sides, it decided to reiterate to the jurors the specific jury instructions already provided. The trial court's response was not an abuse of discretion.

### C.    *No Reasonable Likelihood of Misunderstanding*

Even if there were a flaw in the trial court's response—which we do not hold—there was no " ' "reasonable likelihood" that the jury misconstrued or misapplied the law in light of the instructions given, the entire record of the trial, and the arguments of counsel.' " (*Mathson*, *supra*, 210 Cal.App.4th at p. 1312.)

As detailed above, CALCRIM No. 3425 and other instructions required the jury to find defendant not guilty of his charged offenses if there was a reasonable doubt he was conscious while he was driving in the wrong direction, not the entire time that he was driving. Although at trial defendant testified that he lacked awareness the entire time he was driving, defendant's epilepsy specialist opined that defendant was unconscious during a seizure that occurred while he was driving. He further expressly testified that it was "entirely within the realm of possibility" that defendant was unaware of his actions for nine minutes during and immediately after a complex seizure—the estimated period of time that defendant was driving. In response to another hypothetical, the specialist testified that driving in the wrong direction for 9 to 10 miles, like defendant, was very consistent with someone driving experiencing a seizure and postseizure effects. In his closing argument, defense counsel reiterated this and identified wrong-way driving as the focal point for defendant's unconsciousness defense by stating

10

defendant "has to intentionally do the act, and *the act is driving the wrong way on highway 101* leading to the death . . . ." (Italics added.)

Defendant claims the jury was confused about the instructions, but " ' " ' "we must assume that jurors are intelligent persons and capable of understanding and correlating all jury instructions which are given." ' " ' " (*People v. Landry* (2016) 2 Cal.5th 52, 95.) During the remainder of the deliberations, the jury sent an additional question in a note to the court but did not ask any further questions about the application of CALCRIM No. 3425. We see no basis to conclude the jury misinterpreted the instructions or applied them in a way that violated defendant's rights.[2] (See *Mathson*, *supra*, 210 Cal.App.4th at p. 1312.)

In light of this conclusion, we do not examine whether defendant was prejudiced by any alleged trial court error. (See *People v. Lua* (2017) 10 Cal.App.5th 1004, 1017 [failing to adequately answer jury question subject to prejudicial error analysis]; see also *People v. Roberts* (1992) 2 Cal.4th 271, 326 [applying the prejudice standard of *People v. Watson* (1956) 46 Cal.2d 818, 836, of "whether the error resulted in a reasonable probability of a less favorable outcome"]; *Chapman v. California* (1967) 386 U.S. 18, 24 [federal standard that error was harmless beyond a reasonable doubt].)

---

[2] There is no merit to defendant's claims, to the extent that he makes them, that the trial court denied him the right to present his unconsciousness defense or that the trial court failed to instruct the jury on that defense. Defendant presented extensive evidence to support his unconsciousness defense, and the trial court expressly instructed the jury with CALCRIM No. 3425 on this defense. (See *People v. Dowdell* (2014) 227 Cal.App.4th 1388, 1420 [rejecting defendant's claim that erroneous instruction violated her right to present a defense where defendant introduced substantial evidence supporting defense].)

11

## II.    Motion to Suppress

We reject defendant's additional request to reconsider the writ decision in *People v. Superior Court (Katz)* (Jan. 10, 2017, A149715) [nonpub. opn.], issued by a different panel of this division and denying the suppression of his blood-alcohol test results.[3]  Defendant's claim is precluded by the law of the case doctrine.  (See *People v. Stanley* (1995) 10 Cal.4th 764, 786 [when " ' "upon an appeal, the [reviewing] court, in deciding the appeal, states in its opinion a principle or rule of law necessary to the decision, that principle or rule becomes the law of the case and must be adhered to throughout its subsequent progress, both in the lower court and upon subsequent appeal" ' "].)

Relevant here, defendant's blood was drawn at the hospital after an officer told him that he had to submit to a breath or blood test and that only the blood test was available.  Defendant agreed to the blood test but was not read any formal notice of his right to refuse the test or consequences of that refusal.  The trial court suppressed the blood test results based on defendant's lack of voluntary consent.  In a writ proceeding initiated by the People, this court determined the results were admissible because they would have inevitably been discovered through a warrant, but allowed defendant to renew his suppression motion in the trial court to present evidence that the inevitable discovery doctrine did not apply.  (*People v. Superior Court (Katz)* (Mar. 29, 2016, A146834) [nonpub. opn.].)  The trial court determined the defense sufficiently contradicted a conclusion the results would have been inevitably discovered and granted the suppression motion, which this court

---

[3] Defendant requested that we take judicial notice of records of this court from the two prior writ proceedings addressing his motions to suppress that arose from this case prior to trial.  We now grant his request.  (See Evid. Code, §§ 452, subd. (d), 459, subd. (a).)

again vacated in a second writ proceeding. (*People v. Superior Court (Katz)*, *supra*, A149715.)

Defendant acknowledges the law of the case doctrine applies because the court already determined the precise issue here: Would an officer have inevitably discovered defendant's blood test results after obtaining a warrant? But rather than arguing any significant change in the circumstances of the evidence, he urges us to reconsider the previous decision as wrongly decided and based on rarely cited case law. (See *People v. Sons* (2008) 164 Cal.App.4th 90, 98–99 [law of the case doctrine " ' "prevents the parties from seeking . . . reconsideration of an already decided issue in the same case absent some significant change in circumstances" ' "].) We disagree. The California Supreme Court declined to grant review of this issue (*People v. Superior Court (Katz)*, *supra*, A149175, rev. den. Mar. 29, 2017, S240175), and we similarly decline to reconsider the issue.

## DISPOSITION

The judgment is affirmed.[4]

---

[4] We deny defendant's companion petition for writ of habeas corpus by separate order filed this same date. (*In re Katz*, A159803.)

13

_____
Jackson, J.

WE CONCUR:


_____
Siggins, P. J.


_____
Petrou, J.


A153625/*People v. Zachary A. Katz*

14