Filed 8/14/25  P. v. Limburg CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JACOB MICHAEL LIMBURG,<br><br>Defendant and Appellant. | F087458<br><br>(Super. Ct. No. F21908702)<br><br>**OPINION** |

-ooOoo-

THE COURT*

APPEAL from a judgment of the Superior Court of Fresno County.  John F. Vogt, Judge.

Sarah M. Okdie, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Eric L. Christoffersen, and Caitlin Franzen, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

*        Before Levy, Acting P. J., Detjen, J. and Peña, J.

## INTRODUCTION

A jury convicted Jacob Michael Limburg (appellant) of manufacturing a controlled substance by chemical extraction or chemical synthesis, to wit, "butane honey oil" (BHO) (Health & Saf. Code, § 11379.6, subd. (a); count 1),[1] misdemeanor cultivation of more than six marijuana plants (§ 11358, subd. (c); count 2), and misdemeanor possession of marijuana for sale (§ 11359, subd. (b); count 3). The trial court suspended imposition of sentence and placed appellant on two years of formal probation.[2]

On appeal, appellant claims the trial court's response to a jury question constituted instructional error because it suggested appellant could be convicted of count 1 for manufacturing any controlled substance, not just BHO. Respondent concedes, and we accept respondent's concession. We reverse count 1, vacate appellant's sentence, and remand for retrial and/or resentencing. In all other respects we affirm.

## BACKGROUND

I.      **Prosecution Evidence.**

In September 2021, members of the Fresno County Sheriff's Office and the National Guard conducted aerial surveillance to search for illicit marijuana cultivation sites. A large marijuana grow was observed in the yard surrounding a residence in rural Fresno County.

Approximately two weeks later, a team of sheriff's deputies executed a search warrant at the residence. Appellant was present when the deputies arrived. There were 377 marijuana plants growing on the property, and over 100 pounds of processed marijuana inside of the residence. In a downstairs bedroom, there was a jar of suspected

---

[1]     All further statutory references are to the Health and Safety Code unless otherwise indicated.

[2]     On counts 2 and 3, the court imposed a sentence of credit for time served.

2.

BHO, and a sheet of BHO on a tray lined with wax paper. There was also a jar of suspected BHO on the kitchen counter.

In the garage, deputies located "laboratory equipment" commonly used to manufacture BHO. This included extraction and collection vessels, a vacuum oven, a refrigeration pump, filters, butane storage tanks, cases of butane cannisters, and marijuana plant material.

Law enforcement witnesses explained that BHO is a form of concentrated cannabis that resembles honey. To manufacture BHO, the marijuana is placed in an extraction vessel, such as a cylindrical tube. Butane is introduced through the top end of the extraction vessel. The butane acts as a solvent and extracts a resin from the plant material that is rich in tetrahydrocannabinol (THC), producing the BHO. The BHO then exits through a filter on the bottom end of the extraction vessel. Once collected, the remaining butane in the BHO must be purged. This is often accomplished by placing the BHO in a vacuum oven, which heats the BHO and extracts much of the residual butane. Because butane is highly flammable, BHO is often manufactured in a "closed-loop system," which keeps the butane contained within the extraction system. BHO can also be manufactured in an "open system," which releases the butane gas into the air.

According to the People's expert in the manufacture of BHO, the equipment in the garage included both a closed-loop system and an open system. Both systems appeared to be functional, but parts of the closed loop system were disassembled. Neither system was currently producing BHO, and the expert could not tell if they had been used recently.

Appellant gave a *Miranda*[3] statement at the scene. The statement was not audio recorded. According to the interviewing deputy, appellant stated the marijuana at the property was his. The equipment in the garage was also his, but he claimed it was not in

---

**3** *Miranda v. Arizona* (1966) 384 US. 436.

3.

working order and had not used it in about one year. He stated he was "responsible for all of the manufacturing of honey oil."

Samples of the suspected BHO recovered from the residence tested positive for THC. The samples were not tested for the presence of butane. The People's expert testified that the color and texture of the substance was consistent with BHO, but he could not conclusively determine it was BHO just from its appearance. On cross-examination, he agreed the substance could have been a form of concentrated cannabis made without butane.

## II. Defense Evidence.

A defense expert on cannabis extraction testified there are numerous forms of concentrated cannabis that can be manufactured without the use of butane or other chemical extraction. Such methods use temperature or pressure to extract the oils from the marijuana plant. The defense expert explained that one cannot determine whether concentrated cannabis was made with butane by looking at it. Instead, the concentrate must be tested in a laboratory for residual solvents. Such testing is commonly performed on commercial cannabis products.

The defense expert reviewed photographs of the laboratory equipment in appellant's garage. He opined there was equipment that could be used to manufacture BHO, but it was not assembled into functioning systems. He characterized it as "a bunch of stuff strewn around a garage." He did not see any evidence that the equipment was in use, or that BHO extraction had recently occurred.

Appellant's brother testified he lived with appellant at the residence from 2019 to 2021. He moved out a few months before the date the search warrant was served. Appellant and the brother grew marijuana on the property for appellant, who had been diagnosed with cancer.

4.

The brother claimed he purchased the BHO equipment in the garage second hand, but the equipment was broken and he never used it. He had manufactured concentrated cannabis using methods that do not involve butane. He testified appellant only grows marijuana and does not make concentrated cannabis.

## DISCUSSION

**I.      The Trial Court's Response to a Jury Question Erroneously Suggested Appellant Could be Convicted on Count 1 for Manufacturing Any Controlled Substance.**

During deliberations, the jury asked the trial court whether the manufacturing count (count1) is specific to BHO "or any other controlled substance." The trial court responded, "[Y]es."

Appellant contends this response was instructional error because it could be interpreted as allowing the jurors to convict appellant on count 1 for manufacturing a controlled substance other than BHO. Respondent concedes that prejudicial error occurred. We accept respondent's concession, and reverse appellant's conviction on count 1.

### A.      *Background.*

In count 1 of the amended information, the People alleged appellant violated section 11379.6, subdivision (a), by "unlawfully manufactur[ing] … a controlled substance, to wit: Butane Honey Oil."

The trial court instructed the jury on the elements of count 1 with CALCRIM No. 2330. The instruction read, in pertinent part:

> "To prove that [appellant] is guilty of this crime, the People must prove beyond a reasonable doubt that:
>
> "1.      [Appellant] manufactured, compounded, converted, produced, derived, processed or prepared a controlled substance, specifically Butane Honey Oil, using chemical extraction or independent chemical synthesis;

"AND

"2. [Appellant] knew of the substance's nature or character as a controlled substance."

During deliberations, the jury sent a note to the trial court asking the following: "With regard to Charge 1 – is it specific to the manufacturing of <u>Butane Honey Oil</u> or any other controlled substance."

While reviewing the jury question with counsel outside of the presence of the jury, the trial court remarked: "It seems to me that is the way it [was] charged. That's the way it was tried. I believe the answer is a simple, yes." The court proposed that it write the word "yes" on the jury question form. Neither party objected. The court then returned the jury question form to the jury with the following notation: "Answer: YES."

**B.      *Standard of review*.**

In a criminal case, a trial court must instruct the jury on the essential elements of a charged offense (*People v. Merritt* (2017) 2 Cal.5th 819, 824) and on the general principles of law relevant to the issues raised by the evidence (*People v. Diaz* (2015) 60 Cal.4th 1176, 1189).

Penal Code section 1138 requires a trial court to provide information to a deliberating jury upon request regarding "any point of law arising in the case." "Where the original instructions are themselves full and complete, the court has discretion under [Penal Code] section 1138 to determine what additional explanations are sufficient to satisfy the jury's request for information. [Citation.]" (*People v. Beardslee* (1991) 53 Cal.3d 68, 97.) However, the legal accuracy of any supplemental instructions presents a question of law, which we review de novo. (*People v. Franklin* (2018) 21 Cal.App.5th 881, 887, fn. 4; see *People v. Posey* (2004) 32 Cal.4th 193, 217–218; *People v. Cole* (2004) 33 Cal.4th 1158, 1210.)

"When considering a claim of instructional error, we view the challenged instruction in the context of the instructions as a whole and the trial record to determine

whether there is a reasonable likelihood the jury applied the instruction in an impermissible manner." (*People v. Houston* (2012) 54 Cal.4th 1186, 1229.) "We interpret the instructions so as to support the judgment if they are reasonably susceptible to such interpretation, and we presume jurors can understand and correlate all instructions given." (*People v. Vang* (2009) 171 Cal.App.4th 1120, 1129.)

**C.** ***The trial court's response to the jury question resulted in instructional error*.**

Section 11379.6, subdivision (a), prohibits the manufacture of certain controlled substances, including concentrated cannabis, by "chemical extraction" or "chemical synthesis." (See *People v. Bergen* (2008) 166 Cal.App.4th 161, 169 (*Bergen*).) " 'Chemical extraction' " is " 'the process of removing a particular component of a mixture from others present.' " (*Id.* at p. 170, quoting 74 Ops.Cal.Atty.Gen. 70, 75 (1991).) The production of BHO falls within section 11379.6, subdivision (a), because it involves the use of "butane to extract marijuana resin in producing concentrated cannabis." (*Bergen, supra,* 166 Cal.App.4th at pp. 172–173.)

Conversely, the production of concentrated cannabis that does *not* involve chemical extraction or chemical synthesis is *not* prohibited by section 11379.6, subdivision (a). (*Bergen, supra,* 166 Cal.App.4th at p. 169.) Rather, such production is subject to section 11358, which generally prohibits the cultivation and processing of more than six marijuana plants. (§ 11358, subd. (b), see *Bergen,* at p. 169.) As the *Bergen* court explained: "Prosecution under section 11358 would be appropriate, for example, if the resin was physically extracted from the marijuana plant through pressure, through a screening process, … by using an ice water method to produce the concentrated cannabis … [or by] leaching the resin from the plant material by dissolving it in a nonchemical lipid extractor, such as butter." (*Bergen,* at p. 169.) Section 11379.6,

subdivision (a) "is a more narrowly drawn statute, covering only specific methods of processing" cannabis - chemical extraction or chemical synthesis.[4]  (*Bergen,* at p. 169.)

Here, the jury asked the trial court whether the count 1 was "specific to the manufacturing of [BHO] or any other controlled substance."  The question suggests the jury was confused as to whether it could find appellant guilty of count 1 if he manufactured *any* controlled substance, not just BHO.  Based on the court's discussions with counsel, it appears the court intended to give the legally correct answer – that count 1 was specific to BHO.  But given the compound phrasing of the jury's question, the court's response of "yes" was ambiguous.  As the parties agree, the response erroneously suggested appellant could be convicted of count 1 for manufacturing a form of concentrated cannabis that does not involve chemical extraction or chemical synthesis.  We therefore conclude the trial court's response constituted instructional error.

Where, as here, the trial court instructs on one correct and one incorrect theory of guilt, "[t]he reviewing court must reverse the conviction unless … it determines the error was harmless beyond a reasonable doubt."  (*People v. Aledamat* (2019) 8 Cal.5th 1, 13; see *Chapman v. California* (1967) 386 U.S. 18, 24.)  The parties agree, as do we, that the error was prejudicial.  The defense theory at trial was that the evidence was insufficient to show appellant manufactured BHO.  Appellant's expert testified the laboratory equipment in the garage was not in working order, and that it would be impossible to determine whether the concentrated cannabis found inside of the residence was BHO without testing it for residual solvents.  The jury's question suggests at least some jurors

---

**4**     A violation of section 11379.6, subdivision (a), is a felony offense punishable by imprisonment for three, five, or seven years.  With limited exceptions, a violation of section 11358 is a misdemeanor offense.  In drawing this distinction, "[t]he Legislature apparently intended to punish more harshly the use of chemicals in the production of controlled substances because of the dangers posed to the public from the use of hazardous substances, such as fires, fumes or explosions." (*Bergen, supra,* 166 Cal.App.4th at p. 170.)

harbored doubts as to whether appellant manufactured BHO, as opposed to some other form of concentrated cannabis that does not require butane.[5] (See *People v. Brents* (2012) 53 Cal.4th 599, 613 [jury's question indicated it may have relied upon erroneous instruction]; *People v. Czahara* (1988) 203 Cal.App.3d 1468, 1476 [same].) Under these circumstances, the trial court's answer may have caused jurors to convict appellant of count 1 without having concluded beyond a reasonable doubt that he manufactured a controlled substance by chemical extraction or chemical synthesis.

We cannot conclude beyond a reasonable doubt that the verdict rendered on count 1 was unattributable to the instructional error. (See *Sullivan v. Louisiana* (1993) 508 U.S. 275, 279.) Accordingly, we reverse count 1 and vacate appellant's sentence. Upon remand, the People have the option to retry the matter or proceed to resentencing. (See *People v. Wilson* (2023) 14 Cal.5th 839, 855 [errors other than insufficiency of the evidence generally do not preclude retrial following reversal].)

### D. *We need not consider appellant's additional claim of error regarding count 1 because we have already determined count 1 must be reversed.*

In addition to the above jury question, the jury sent a note to the trial court asking whether appellant's "providing the grown, harvested, and prepared" marijuana constituted participation in the production of BHO. The trial court responded by directing the jury to instructions on the evaluation of evidence generally, and to

---

[5] Following trial, appellant filed a motion for a new trial pursuant to Penal Code section 1181 on the same grounds raised in this appeal. The trial court denied the motion.

Respondent notes that in the new trial motion, defense counsel stated the defense team spoke with two jurors after the trial. According to defense counsel, both jurors expressed they did not understand the court's response to the jury's question, and "did not determine that [appellant] manufactured BHO." These unsworn hearsay statements of unidentified jurors are not evidence, and we do not consider them in evaluating appellant's claim. (See *People v. Bryant* (2011) 191 Cal.App.4th 1457, 1468.)

CALCRIM No. 2330.[6] Appellant contends, and respondent agrees, the trial court abused its discretion by failing to specify that solely providing marijuana is insufficient to support a conviction on count 1. Despite the parties' agreement, we need not assess the merits of this claim because we have already concluded count 1 must be reversed on other grounds.

## II. Appellant's Challenge to His Electronics Search Condition is Moot.

As a condition of appellant's two-year grant of formal probation, the trial court imposed the following search condition: "[Y]ou are to submit your person and property, including … computers, hand-held electronic and cellular devices … to search and seizure at any time of day or night by any law enforcement officers, including probation officers, with or without the benefit of a search warrant."

Appellant initially claimed this electronics search condition must be stricken because it is unconstitutionally overbroad and not reasonably related to future criminal activity. However, respondent asserts, and appellant now concedes, that the claim is moot because count 1 must be reversed. We agree. "[W]hen part of a sentence is stricken on review, on remand for resentencing 'a full resentencing as to all counts is appropriate, so the trial court can exercise its sentencing discretion in light of the changed circumstances.' " (*People v. Buycks* (2018) 5 Cal.5th 857, 893.) Because appellant must be fully resentenced, the claim is moot.[7]

---

**6** In CALCRIM No. 2330, the jury was instructed that the "People do not need to prove that the defendant completed the process of manufacturing or producing a controlled substance. Rather, the People must prove that the defendant knowingly participated in the beginning or intermediate steps to process or make a controlled substance."

**7** Respondent also observes that appellant's two-year term of probation apparently expired in November 2024. (See *People v. Carbajal* (1995) 10 Cal.4th 1114, 1120, fn. 5 [expiration of probation during pendency of appeal rendered challenge probation condition moot].)

## **DISPOSITION**

The conviction on count 1 is reversed. Appellant's sentence is vacated, and the matter is remanded for resentencing. Prior to resentencing, the prosecution may elect, but is not required, to retry appellant on count 1. In all other respects, the judgment is affirmed.